THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DARRYL SHEARS,<br><br>                          Plaintiff,<br><br>         v.<br><br>UNITED STATES OF AMERICA,<br><br>                          Defendant. | CASE NO. C13-0065-JCC<br>                          CR08-0307-JCC<br><br>ORDER DENYING MOTION TO<br>ENFORCE PLEA AGREEMENT<br>AND FOR RETURN OF PROPERTY |

This matter comes before the Court on Plaintiff's motion to enforce the plea agreement in Case No. CR08-0307-JCC, and his motion for return of property (Dkt. No. 2). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby DENIES Shears' motion to enforce the plea agreement and GRANTS the Government's motion for summary judgment for the reasons explained herein.

## I.      BACKGROUND

Shears pleaded guilty to Conspiracy to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (*United States v. Shears*, No. CR08-0307-JCC ("criminal case"), Dkt. No. 259 at 1.) The Honorable James L. Robart presided over Shears' change of plea hearing and the first sentencing hearing in this matter. (Criminal case, Dkt. No. 180, 276.) Judge Robart determined that the Government's sentencing recommendation at the first sentencing hearing breached the plea agreement. (Criminal case, Dkt. No. 236.) He recused himself from the

case and it was reassigned to this Court. (Criminal case, Dkt. No. 244.) This Court sentenced Shears to a term of imprisonment of 188 months. (Criminal case, Dkt. No. 259).

Three years after the Court sentenced Shears, he filed a motion "to enforce plea agreement and return property" in the criminal case. Because there were no criminal charges pending when Shears filed his motion, the Court treated his motion as a civil complaint and the Government's response as a motion for summary judgment under *United States v. Ritchie*, 342 F.3d 903, 905 (9th Cir. 2003). (Dkt. No. 1.)

Shears argues that the Government agreed as part of his plea agreement that the court would hold a hearing on forfeiture of currency seized in connection with his criminal case. He argues that the Government has breached the plea agreement because he never got that hearing. Instead, the funds were forfeited through the administrative forfeiture process. Shears argues that he is entitled either to a hearing on the forfeiture or to withdraw from the agreement.

Shears' motion also asks the Court to order the return of three vehicles, but it provides no argument to support those claims. Shears' response to the Government's summary judgment motion makes no mention of the vehicles. Shears appears to have abandoned his claims related to the vehicles and the Court does not address them further.[1]

**A.  Administrative Forfeiture Proceedings**

The United States Drug Enforcement Agency ("DEA") instituted two administrative forfeiture proceedings for funds seized in connection with Shears' criminal case. In DEA Case No. RE-07-0041, the Government administratively forfeited $271,450 seized from Shears. (Dkt. No. 5 at 17 & Ex. 68.) The Asset ID Number for those funds was 08-DEA-505537. (Dkt. No. 5 at 17.) The DEA sent written notice of the seizure of the $271,450 to Shears at both a residential address in Renton and at Seatac Federal Detention Center. (Dkt. No. 5 at 17–18 & Exs. 55, 57.)

---

[1] The Government submitted documents showing that the Seattle Police Department released two of vehicles to lending institutions holding outstanding liens on them. (Dkt. No. 5 at 7–13.) The third vehicle was released to a towing company. (Dkt. No. 5 at 2–7.)

ORDER DENYING MOTION TO ENFORCE PLEA
AGREEMENT AND FOR RETURN OF
PROPERTY
PAGE - 2

1    The DEA also sent the notice to Shears care of Attorney Robert Leen, who was initially

2    appointed to represent Shears in the criminal case. (Dkt. No. 5 at 18 & Ex. 59.) The DEA

3    received signed return receipts for each of these notices from the United States Postal Service.

4    (Dkt. No. 5 at 17–18 & Exs., 56, 58, 60.) In addition, the DEA published notice of the seizure in

5    the *Wall Street Journal* on three successive Mondays. (Dkt. No. 5 at 19 & Ex. 65.)

6          The DEA received a claim for seized property from Shears' attorney Howard Phillips[2] in

7    October 2008. (Dkt. No 5 at 19 & Ex. 18.) The DEA rejected the claim because it was received

8    one day late. (Dkt. No. 5 at 19 & Ex. 66.) The DEA's notice denying Shears' claim as untimely

9    stated that he could file a petition for remission or mitigation within twenty days of receiving the

10   notice. (Dkt. No. 5, Ex. 66.) Shears submitted document entitled "Mitigation Petition," which

11   included declarations explaining why the first submission was late and stating that the $271,450

12   was seized from him, but saying little else. (Dkt. No. 5 at 20 & Ex. 69.) The DEA denied Shears'

13   Mitigation Petition on June 12, 2009. (Dkt. No. 5 at 20 & Ex. 72.) The DEA mailed notice of this

14   decision to attorney Phillips. (*Id.*) The DEA decision stated that Shears had "failed to provide

15   sufficient documentation showing a legitimate origin for the forfeited currency" and that he gave

16   up his interest in the $271,450 as part of his plea agreement. (Dkt. No. 5, Ex. 72.)

17         The second administrative forfeiture of currency related to Shears' criminal case was of

18   $244,460. (Dkt. No. 5, Ex. 91.) The Asset ID Number for those funds was 08-DEA-505690.

19   (Dkt. No. 5 at 21.) The DEA did not provide notice to Shears of the seizure or forfeiture of the

20   $244,460. (Dkt. No. 5 at 21-26.) According to the "Report of Investigation" prepared by DEA

21   Task Force Officer Richard Huntington, the $244,460 was seized after the search of a vehicle.

22   (Dkt. No. 3-1.) According to the report, Shears' co-defendants Bertario Santos-Rojas, and Maria

23   de Jesus Baez consented to the search of the vehicle and were present during the search. (Dkt.

24   No. 3-1 at 2–3.) The vehicle was reportedly registered to Jesus Macedo. (Dkt. No. 3-1 at 5.) The

25

26        [2] After Shears retained Mr. Phillips, the court entered an order substituting Mr. Phillips for Shears' prior attorney, Robert Leen. (Criminal case, Dkt. No. 46.)

DEA sent notice of the forfeiture of the $244,460 to Santos-Rojas, Baez and Mecedo. (Dkt. No. 5 at 21–25.)

## II.     DISCUSSION

### A.      The Plea Agreement

Shears argues that the Court erred in converting his motion for return of property into a civil complaint and treating the Government's response as a motion for summary judgment. He argues that his motion is one to enforce his plea agreement, which he believes the Government has breached, and he seeks either specific performance of the plea agreement or permission to withdraw from the agreement. (Dkt. No. 10 at 13.) The Court will address that argument before turning to Shears' motion for return of property.

The government must honor the promises it makes in a plea agreement. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). When the government breaches a plea agreement, even inadvertently, the proper remedy is to vacate the judgment and either require specific performance of the agreement or permit the defendant to withdraw from the agreement. *Id.* at 262–63. Accordingly, the key issue before the Court is the meaning of the paragraph in Shears' plea agreement addressing forfeiture.

A plea agreement is a contract. *United States v. Anderson*, 970 F.2d 602, 606 (9th Cir. 1992), *as amended by* 990 F.2d 1163 (9th Cir. 1993). The court applies contract law standards to determine "what the parties reasonably understood to be the terms of the agreement." *United States v. Floyd*, 1 F.3d 867, 870 (9th Cir. 1993). "The government is held to the literal terms of the agreement, and ordinarily must bear responsibility for any lack of clarity." *Thomas v. INS*, 35 F.3d 1332, 1337 (9th Cir. 1994).

Shears' plea agreement with the Government includes the following paragraph addressing forfeiture:

ORDER DENYING MOTION TO ENFORCE PLEA
AGREEMENT AND FOR RETURN OF
PROPERTY
PAGE - 4

1

2

3

      **11.**    **Forfeiture of Contraband.** Defendant agrees that any firearms or illegal contraband *or currency* seized by any law law enforcement agency from the possession of Defendant shall be forfeited *. . . . Defendant reserves the right to challenge forfeiture of jewelry*.

4

5

6

7

8

9

10

11

12

13

14

15

16

(Dkt. No. 2 at 25.) The italicized portions of the paragraph are handwritten interlineations that were added during the change of plea hearing and initialed by Shears, counsel, and the Honorable James L. Robart, who presided over the hearing. (Dkt. No. 2 at 25, 31–32.) The interlineations were made after Shears and his attorney Howard Phillips raised concerns that some of the money seized from Shears was not the proceeds of illegal drug sales. (Dkt. No. 2 at 31.) Judge Robart left the bench in order to give the parties an opportunity to add language to the plea agreement indicating that "the defendant reserves the right to challenge the forfeiture of currency if it is unrelated to the crime being pled to." (Dkt. No. 2 at 31.) Judge Robart added "it's not uncommon for me to hold a hearing on forfeiture in which both sides present their evidence as to why they think it was either connected to the conspiracy or it was not connected to the conspiracy." (Dkt. No. 2 at 32.) When he returned to the bench, Judge Robart reviewed the interlineations to paragraph 11 and asked "Mr. Shears, is the language that's there now acceptable to you?" (Dkt. No. 2 at 32.) Shears responded: "Yes." (Dkt. No. 2 at 32.)

17

18

19

20

21

22

      First, to the extent that Shears argues that the plea agreement promised him a hearing on the forfeiture of the $244,460, that argument is meritless. By its clear and unambiguous terms, the agreement applies only to currency "seized by any law enforcement agency *from the possession of Defendant*." (Dkt. No. 2 at 25) (emphasis added). The $244,460 was seized from the possession of Shears' co-conspirators, not from Shears himself.  The plea agreement simply makes no mention of currency seized from anyone but Shears.

23

24

25

26

      Giving the words of the plea agreement their ordinary meaning, they do not clearly support Shears' argument that the Government promised him a hearing on the forfeiture of currency that was seized from his possession. Indeed, read together the two sentences of paragraph eleven support the opposite conclusion. Giving it the reading most favorable to

Shears, the first sentence states that Shears agrees to forfeit any "illegal currency." The use of the adjective "illegal" to modify currency, standing alone, does not create a promise to hold a hearing on the legality or illegality of any particular currency. The second sentence specifically reserves the right to challenge the forfeiture of jewelry. It demonstrates that the parties knew how to reserve Shears' right to challenge specific forfeitures. The failure to include a similar sentence unambiguously preserving the right to challenge the forfeiture of currency tends to suggest that it was not the parties' intent to do so.

Shears argues that Judge Robart's statements from the bench about a hearing on forfeiture were a promise that was included in the plea agreement. A district judge, however, is not a party to a plea agreement. *See United States v. Quan*, 789 F.2d 711, 714 (9th Cir. 1986). The prosecutor's lack of objection to Judge Robart's statement about forfeiture hearings in other cases was not a promise by the prosecutor that a hearing would be held in this case. Indeed, whether to hold a hearing on a particular issue is a decision that rests with a judge, not a prosecutor. Even if Shears did not understand that Judge Robart's statements were not promises made by the prosecutor, his lawyer certainly should have and was responsible for ensuring that the plea agreement captured all promises made by the government.

Finally, in determining the meaning of the plea agreement, the Court cannot ignore the fact that when Shears pled guilty, both he and his attorney were aware of the administrative proceeding to forfeit the $271,450. Attorney Phillips had filed Shears' untimely claim and mitigation petition in the administrative forfeiture proceeding before Shears' April 8, 2009 change of plea hearing.

Having carefully reviewed the plea agreement itself, as well as the transcript of the change of plea hearing, the Court concludes that the plea agreement did not contain any promise that the court would hold a hearing on the forfeiture of currency. Accordingly, Shears' motion to enforce the plea agreement (criminal case, Dkt. No. 273) is DENIED.

ORDER DENYING MOTION TO ENFORCE PLEA
AGREEMENT AND FOR RETURN OF
PROPERTY
PAGE - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**B.      The Rule 41(g) Motion**

Shears' motion also seeks "return of property" and cites Federal Rule of Criminal Procedure 41(e). In 2002, stylistic revisions to the Federal Rules of Criminal Procedure moved the provisions dealing with motions to return property to subsection (g) of Rule 41. If there are no criminal charges pending at the time a motion for return of property under Federal Rule of Criminal Procedure 41(g) is filed, the court is required to treat the motion as a civil complaint governed by the Federal Rules of Civil Procedure. *U.S. v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008) (citing *Ritchie*, 342 F.3d at 906–07). It is improper for the court to consider evidence submitted in support of the government's opposition to such a motion without converting the government's opposition to a motion for summary judgment and giving the movant an opportunity to respond. *Ritchie*, 342 F.3d at 909.

As required by *Ritchie* and *Ibrahim*, the Court converted Shears' motion into a civil complaint. (Dkt. No. 1 at 4.) The Court stated that it would treat the Government's opposition to Shears' motion as a motion for summary judgment governed by Federal Rule of Civil Procedure 56. (Dkt. No. 1 at 4.) The Court also advised Shears, a pro se prisoner, of the standards governing motions for summary judgment and gave him an opportunity to respond to the motion. (Dkt. No. 1 at 4.)

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id*. at 255.

A plaintiff seeking to recover property that has been administratively forfeited may present a claim alleging "constitutionally deficient notice" of the forfeiture proceeding. *United*

1 *States v. Clagett*, 3 F.3d 1355, 1356 (9th Cir. 1993). "[W]here a claimant has received adequate

2 notice of an earlier administrative forfeiture proceeding, and thus has had an adequate remedy at

3 law, the district court should deny a subsequent [Rule 41(g)] motion." *Ritchie*, 342 F.3d at 907.

4 The Government has submitted evidence that Shears received notice of the seizure and

5 forfeiture of the $271,450. Specifically, the declaration of Vicki Rashid and the exhibits thereto

6 show that the Government sent notice of the forfeiture to Shears at his residential address, at the

7 federal detention center where he was being held, and though his counsel. (Dkt. No. 5 at 17–18

8 & Exs. 55–60.) The Government received a signed return receipt for each notice from the United

9 States Postal Service. (Dkt. No. 5 at 17–18 & Exs. 55–60.) Moreover, Shears filed a claim for the

10 property (albeit late) and a petition for mitigation (Dkt. No. 5 at 19–20 & Exs. 18, 69), which

11 demonstrates that he had actual notice of the forfeiture proceedings.

12 Shears submitted no evidence in response to the Government's motion for summary

13 judgment. Indeed, he makes no argument regarding the adequacy of notice of the administrative

14 forfeiture proceedings. Accordingly, the Court grants the Government's motion for summary

15 judgment.

16 The Government has submitted no evidence that Shears received notice of the proceeding

17 to forfeit the $244,460, but there is nothing to suggest that Shears was entitled to such notice. A

18 person claiming an interest in property subject to forfeiture must demonstrate some interest in the

19 property. *See United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994). The

20 $244,460 was seized from Shears' co-conspirators, not Shears himself. He did not own the

21 vehicle in which the currency was found. In short, there is nothing to suggest that he had any

22 interest in the $244,460.

23 **III.    CONCLUSION**

24 For the foregoing reasons, Shears' motion to enforce plea agreement and for return of

25 property (Dkt. No. 2; criminal case, Dkt. No. 273), is DENIED. The Government's motion for

26 Summary Judgment (Dkt. No. 3), is GRANTED. The Clerk is respectfully directed to close Case

1   No. C13-0065-JCC.

2        DATED this 18th day of April 2013.

3

4

5

6

7

8                                          John C. Coughenour

9                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING MOTION TO ENFORCE PLEA
AGREEMENT AND FOR RETURN OF
PROPERTY
PAGE - 9